4110189 American Family Insurance v. Corbin for the appellant, Mr. Allen, for the appellee, Mr. Vito, you may proceed. May I please report, counsel? Basically, this case is a pretty straightforward one, probably one of the smallest briefs you've seen all year. The record is firmly established with the facts of the case. Very briefly, I represent the Corbin family. The Corbin family filed a complaint against Robert and Melissa Fender. Robert and Melissa Fender were parents of Cameron Fender, who was 16 at the time where some indiscretions were made by Cameron. Jill and Chad Corbin were parents of Sydney Corbin, who was 7 years old, girl. And as the record shows, basically the Corbins and the Fender families were friends. They lived on the same block, in the same town. The lawsuit basically alleged that Robert and Melissa Fender, the parents of Cameron, affirmatively offered and pushed and suggested to Jill and Chad Corbin that their son Cameron would be available to babysit Jill and Chad's child, Sydney. They did this even though they had some general knowledge that Cameron had some prior, shall we say, sexual indiscretions. In fact, they were on notice, if you will, that Cameron had, on at least two occasions that we can tell, done some improprieties to other children. None of this was made aware to the Corbins by the Fenders. The Corbins had no idea. The Corbins, as very good friends of the Fenders, thanked them for the suggestion and used Cameron as a babysitter. And the first time that Cameron babysat Sydney Corbin, a sexual molestation took place. At the time, Cameron was 16 years old and Sydney was 7 years old. Eventually, Cameron pled guilty under a juvenile adjudication. And this lawsuit sued the parents of Cameron, not for the actual specific actions of Cameron, but for their negligence and their statements, affirmative statements to the Corbins saying, hey, our kid's a nice kid, let him babysit for you, intentionally withholding the other information. Oh, by the way, he's already had a couple of incidents of sexual improprieties. The case here at Barr came in play because American Family is their insurer for the Fenders, under their policy. And a death action was filed. American Family's position basically is, hey, there's no coverage here for a couple different reasons. And the one we're here for today is that there's an exclusion in the insurance contract that reportedly states that, well, that does state that American Family will not cover any actions under a violation of any criminal law for which any insurer is convicted. And it is the appellant's view that this statement in and of itself, which, by the way, is contained in an insurance contract 26 pages long, I believe, didn't define anything about the criminal law. That's the only statement that said no mention of juvenile adjudication, only said violation of criminal law. Now, it's well established under Illinois law, frankly anywhere, that there's a dichotomy with regards to the criminal justice system. In other words, people are treated differently for the same incident if someone is a minor versus someone is the age of majority. The policy says violation of any criminal law. Correct. Justice, go ahead. So is that distinguished between juvenile cases, felonies, misdemeanors, et cetera? That's a good question. I don't know. It's ambiguous on its terms. I don't think so. It's any. Any means any. Certainly. I think one alternative reading of that would be a violation of any criminal law. Well, a juvenile adjudication is not a violation of a criminal law. So I think the way that the state has treated juveniles versus adults in the past would make that reading at least open to interpretation. And as an aside, even on an everyday basis, if you go ahead and fill out a one-page application for employment at McDonald's, they'll ask you, have you ever been convicted of any law or noble contendere or pled guilty or whatever else, even on a one-page blank application for McDonald's, they'll at least go ahead and specify more than just criminal law. So from the Corbin standpoint, the violation of any criminal law, and again, this lawsuit is not against the Fenders for the intentional act itself. And again, from there, we go on to whether it's intentional, whether the act itself was intentional, or the damage was intentional. In other words, did Cameron Fender mean to cause harm to Sidney versus did he mean to do a sexual assault? And that's kind of where the case law goes down that far, if we get that far with it. So despite whether it's an intentional act and whether an occurrence takes place, we kind of have that fork in the road. Whether just because Cameron intended to have a sexual assault, he didn't intend to cause the injury to Sidney. But before we get to that point, the case frankly is under a 26-page contract, under Illinois law, minors are treated differently than adults. And the simple statement of violation of any criminal law without any reference at all to a juvenile adjudication for someone that not aged a majority, appellants would argue respectfully that this is ambiguous, and at least is a question of fact for the trial court. What if the state of Indiana says for purposes of consideration of the civil law, an adjudication of guilt for a felony in a juvenile case shall be deemed a conviction? And then I buy this policy in Indiana. If I have it in Illinois, there's no coverage. Or if I have it in Illinois, there's coverage. If I have it in Indiana, there's not. No, I'm not sure about that. Well, maybe I didn't phrase it artfully, but you know the point of my question. Sure. I guess I would analogize that to if you buy car insurance in the state of Indiana, and they have different liability limits. Let's say it's 1530, and you drive in the state of Illinois, you automatically have to conform to the state of Illinois, which is 2040. So even if you bought an insurance policy with limits of 1530 to different states, when you come to the state of Illinois, you have to abide by the state of Illinois and its rules regarding minimum coverage. So I would argue that the same point along those lines would be analogous here under Illinois law. Well, except that that would be, I'm talking about if I lived in Indiana, then you've got different coverage based on the same contract in two states. Sure. Which is supposed to be operative? The contract or the state's approach to, in this instance, juvenile adjudication? Sure. I would think that my unlearned opinion there would be that the state would still trump over the contract provision, just like it would under the auto insurance analogy that I just gave you. But you know what? That's an interesting question. All it would have taken in this case is have one more line and this 26-page single-spaced fine line contract to mention juvenile adjudication, and all it does is say violation of criminal law. And I would argue respectfully that the state of Illinois has always, as most states, frankly, have always treated a minor adjudication versus an adult conviction of a criminal law very differently. I think we have no further questions. All right. Thank you. May it please the Court. Counsel Jovito on behalf of APALE, American Family Insurance. In listening to counsel's argument before the Court, what struck me is his very myopic take on the issues in this case. This is not a case about a single line in a 26-page policy. This is about a 26-page insurance policy with multiple exclusions, all applicable to the conduct of Mr. Fender, the sexual molestation conduct of Mr. Fender. What I mean by that, Justices, is what we first need to look at in interpreting this insurance policy and whether there's coverage is to, one, consider it a contract, which it is. The case law in Illinois is clear. Insurance policies are contracts between policyholders and the insurance company. In order to interpret that policy, we have to look at what the intent of the parties was. It is absolutely absurd to think that either the policyholder, the Fenders in this case, or American Family Insurance, the insurer, intended for this policy to cover sexual misconduct of Cameron Fender. You buy homeowners insurance if there's a hole in your roof and water comes in. If someone comes over and swims in your pool and bangs their head on their diving board. If your dog bites the mailman. That is why you have homeowners insurance, for liability issues and for property damage. You do not have homeowners insurance to indemnify you against criminal conduct, to indemnify you against the criminal conduct of your children or anyone else who's engaging in intentional conduct. If we look at the case law, and I'm not just saying this as myself to the court, if we look at State Farm v. Waters, which is a case of sexual abuse, the court, echoing what I'm saying to the justice, has now said, homeowners coverage for criminal sexual abuse of children is undoubtedly outside the contemplation of the parties to the insurance contract. Indeed, the average person purchasing homeowners insurance would cringe at the very suggestion that the person was paying for such coverage and certainly would not want to share that type of risk with other homeowners' policies. It goes without saying. The intent of the parties in this case was never to engage into a contract where there would be a duty to indemnify or a duty to defend on the basis of sexual molestation. If we move from the very general and broad intent of the parties into the specific language... What if the juvenile in this case was wrestling with the seven-year-old and she fell down the steps? Would that be covered? If the juvenile was wrestling, I think in that case the conduct was not intended harm. And the courts have been clear that sexual abuse, by definition, is intentional conduct and intended harm. If it was just wrestling, that would be covered. But what if the wrestling involved sexual contact? If it was non-consensual sexual contact, I think the courts are clear in indicating that that is an intentional injury that's not covered under insurance policies for liability under negligence. And I'm specifically referring in one instance to the Westfield v. Continental Community case where it says, under this rule, if a person sexually abuses a minor, the court will find as a matter of law that the abuser intended to injure his or her victim. As a matter of law. And they're citing the Waters case, which is the case I just read before regarding the overall intention of the policy. If we go back to the actual policy language itself, there are numerous exclusions throughout the policy that will more clarify why this isn't covered and to differentiate it from your wrestling example. And to be very unequivocal about it, there is a specific exclusion for sexual abuse. It's exclusion number one. Number one. The first exclusion in the policy that's enumerated is abuse. It states in the policy, number one, abuse. We will not cover claims or suits seeking damages, including defense of the same, to any insured who inflicts or directs another person to inflict upon any person sexual molestation or conduct, corporal punishment, or physical or mental abuse, which results in bodily injury or property damage. It is excluded specifically the sexual abuse. I don't understand how it could be any more equivocal to say that any insured, which would include the children of the policy holders. Your opponent refers to the case People v. Taylor. Yes. Do you respond to that? Yes. People v. Taylor. How do you respond to it in your brief? I'm sorry, what was the question, Justice? Where did you respond to it in your brief? It's the first argument I made, Judge, in response to him. It's section – I'm sorry, it's not the first argument. It's the – oh, yes, it is. It's the first argument, item one, violation of law exclusion. And then I go in to talk about why People v. Taylor is in opposite to this case, and I can explain that to Your Honor. People v. Taylor was a very insular ruling that considered the definition of a conviction in a case involving a juvenile adjudication. The court in that was in determining whether or not a juvenile adjudication would be synonymous with a felony conviction in determining whether that juvenile adjudication would be applicable to what's called the escape statute. Basically, if a felon escapes a correctional facility and they've already had a felony conviction, would a juvenile adjudication count in that new statute to basically be a strike against them in determining what degree of felony they would be charged with under the escape statute? As the trial court noted in this case, that is a very, very insular and nuanced definition of the word conviction. What I've argued is, under contract law, under contract interpretation, we are not to give words their very nuanced and insular definition. We are to give, as Henry Anderson states, words their common, ordinary, plain, and popular meaning. The popular meaning of the word conviction is not to differentiate it from a juvenile adjudication. Rather, the popular, ordinary, plain meaning of the word conviction is someone who is guilty of a crime who is then serving time for it. In this case, Cameron Fender pled guilty to the crime and served a seven-year sentence for it. Any person that I go walk into that parking lot right now and say, was that man convicted? They would say, absolutely he was. He's in jail. He pled guilty. It's a conviction. And the most important point to make about that is that is one singular exclusion in this policy. Even if this court says, you know what? Counsel's right. It's not a violation of law. Then counsel still has to say why it's not excluded under the specific exclusion for abuse, why it's not excluded under the other exclusions, that being intentional injury. We have intentional injury. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured, even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of the insured. Again, we have an intentional act by Cameron Fender that is specifically included under a sub-exclusion of the policy. Counsel made no point of that. Also, did the trial court rely on these other arguments you're making, or did the trial court just rely on the? The trial court in their ruling, in the transcript in their ruling, only ruled upon the violation of law issue, the violation of law and whether or not it was a conviction. Whether or not conviction and juvenile adjudication were synonymous, and the trial court deemed that it was not. Did you represent American family in the trial court? I did not. Are you able to discern why the court opted to rule on that issue? From the record or from your knowledge of the case? From the record, the way I was reading it, it looked like the trial court had a very long, and this is all surmising conjecture because I was not there, it looked like the judge in the trial court had a very good handle of criminal law and juvenile law. I don't know his history. I don't know where he came from. But people tend to rule on. He may have felt more comfortable ruling on that issue. I don't know why. He did not rule on the other issues, and I'm not certain why. If I can continue with the court on one final point, in order for almost any liability policy under any insurer, whether it's my company, American Family, State Farm, Allstate, whoever, in order for a liability policy to trigger coverage, there has to be an occurrence. An occurrence is defined in almost every policy of the big insurers that I name as an accident. The courts have gone over this over and over and over again to determine what's an accident. The case of Westfield, which is very, very similar to the current case at Barr, basically stated that it's no accident to engage in sexual molestation, and therefore no occurrence took place. If no occurrence takes place, there's no trigger of coverage whatsoever. It's all part of the same, I guess, soup of intentional conduct, occurrence, and the intent of the parties as to what they're insuring in this case. As a final point, I just want to again reiterate that under no circumstances did either American Family or the offenders ever engage in this contract with the intent of covering sexual molestation. Any attempt by the other side to say that, well, this is not intentional conduct, it's negligent conduct of the parents for letting the child go there, is simply an attempt to trigger coverage. The Westfield case and State Farm v. Waters case both address that issue and say, it's clear, this is merely an attempt, and framing it as a negligence issue, it's merely an attempt to trigger coverage. This case is really about nothing more than intentional conduct, criminal conduct, and excluded conduct, specifically under the abuse provision. And therefore, I think the trial court must be upheld, and this appeal must be denied. You know, your argument that there's never a distinction between sexual molestation and an argument, what if there were no issue of minority here? What if the son was just having intercourse with somebody, and they fell out of bed, and she broke her arm? For coverage there? If it was consensual, there may be coverage. I would argue on behalf of American Family, no, because of the intentional conduct. The intentional conduct exclusion basically says, any intentional conduct you engage in, whether or not the injury is what you intended the injury to be, is excluded. The argument, though, in the example you give is much different, in that there is consensual sexual conduct. Therefore, the abuse and sexual molestation exclusion of the policy would not come into play. Again, I don't know if it would be covered under the homeowner's policy, under the intentional conduct provision, I doubt it would be. Nothing further. Thank you, Justices. Rebuttal? Just briefly, if I may. Thank you. I actually did appear at the trial court proceedings and did represent the court during this matter. For what it's worth, Judge Chase Leonard, previously a state's attorney with Champaign County, was the judge. All of these issues that were brought up today by counsel and myself were fully briefed. Judge Leonard only felt comfortable enough to make a decision on the one point. The other points that counsel brought up, he intentionally did not make a decision on. Let me be clear, he didn't find in my favor or in the other person's favor, he decided that the only decision that he was going to make would be the one that we're here for today. That being said, if I just may simply address everything that's briefed here, so I don't mean to go into this very far, but counsel kind of opened the door for me. He referred to the State Farm v. Waters case on a couple different occasions. And that's where this whole idea of intentional came in. And from there, certainly counsel's talking about all these other exclusions in the contract. Well, I'd love the opportunity to sit down and talk about those exclusions and tell you why those aren't applicable. We're only here on the one. But technically, counsel brought up that Illinois law generally stands for the proposition that an insurance company is under no duty to defend or indemnify an insured who sexually abuses a minor. And that's basically what the Waters case said. However, this intent to injure is not inferred when the abuser is also a minor. And that's the country mutual insurance company v. Hagen case, which I cited the paragraph right after I brought up Waters. And what the Hagen court did is say, well, you know what, the Hagen court dealt with almost identical facts. There, the minor was 14. And in this case, Cameron Fender, I believe, was 16. It's about the only difference. And basically, the court there found that it did not apply, that the exclusion for the intentional act did not apply, because as in this case, that lawsuit sued the parents, just like we did here. And the Hagen court basically said, you know what, this is a factual case-by-case distinction that we need to do. So counsel is correct when he brought up the Waters case. But specifically, the Hagen case right after that came back and said, wait a minute. If this was an adult doing this to a minor, then that insurance contract exclusion would apply. But if it's another minor doing it to a minor, then we have to look at it case-by-case. How old is the other minor? What kind of intent was there? And again, the other point that counsel brought up, whether it's an occurrence, there is a difference whether there is an intent to commit a sexual act versus an intent that that sexual act would cause an injury when it's a minor doing it. And these are interesting cases that the trial court did not rule upon dispositively, but I agreed. So I would love the chance to come back here if need be and argue those. I've already briefed it in the initial. But right here, we're here basically on the one thing that the trial court did decide, and that's the Waters case we're talking about today. Thank you, counsel. Thank you. We'll take this matter under advisement.